## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CHARLOTTE KOKOCINSKI,
derivatively on behalf of
MEDTRONIC, INC.,

     Plaintiff,

  vs.

ARTHUR D. COLLINS, JR.,
WILLIAM A. HAWKINS, GARY
ELLIS, RICHARD H. ANDERSON,
DAVID CALHOUN, VICTOR J.
DZAU, SHIRLY ANN JACKSON,
JAMES T. LENEHAN, DENISE M.
O'LEARY, KENDALL J. POWELL,
ROBERT C. POZEN, JEAN-PIERRE
ROSSO, JACK W. SCHULER,
MICHAEL R. BONSIGNORE,
GORDON M. SPRENGER,
WILLIAM R. BRODY, and OMAR
ISHRAK,

     Defendants,

   - and -

MEDTRONIC, INC.,

    Nominal Defendant.

       Civil No. 12-0633 (JRT/JJG)

       The Honorable John R. Tunheim

---

### Plaintiff's Omnibus Memorandum of Law
### in Opposition to Motions to Dismiss

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr.
(*pro hac vice*, CA Bar No. 175783)
Albert Y. Chang
(*pro hac vice*, NY Bar No. 4067492)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Facsimile:   (858) 914-2002

REINHARDT WENDORF & BLANCHFIELD
Garrett D. Blanchfield, Jr.
(MN Bar No. 209855)
E1230 First National Bank Building
332 Minnesota Street
St. Paul, Minnesota 55101
Telephone:  (651) 287-2100
Facsimile:   (651) 287-2103

*Attorneys for Plaintiff Charlotte Kokocinski*

## Table of Contents

INTRODUCTION ........................................................................................................ 1

PROCEDURAL BACKGROUND ............................................................................... 3

    I.    Kokocinski's Initial Complaint .................................................... 3

    II.    The Writ Proceedings in State Court ........................................... 4

    III.    Kokocinski's Amended Complaint .............................................. 5

    IV.    The Pending Motions ................................................................... 5

ARGUMENT ............................................................................................................... 6

    I.    *Janssen* and *UnitedHealth* Permit *No Deference* to a
        Conflicted Board of Directors That Never Attempted to
        Create an Independent SLC ......................................................... 6

    II.    The SLC Has Failed to Carry Its Burden to Demonstrate That
        Its Members Are Disinterested and Independent and That Its
        Investigative Procedures and Methodologies Were Adequate,
        Appropriate, and Pursued in Good Faith ................................... 11

        A.    The Members of the SLC Are Interested Because They
            Were Paid in a Manner That Violates Medtronic's
            Bylaws ............................................................................ 11

        B.    The SLC Report Fails to Show Adequate Investigative
            Procedures and Methodologies Pursued in Good Faith ... 17

    III.    The Court Should Deny the Motions to Dismiss as
        Procedurally Improper or, in the Alternative, Convert the
        Motions to Ones for Summary Judgment and Allow
        Kokocinski an Opportunity to Conduct Discovery ................... 24

CONCLUSION ......................................................................................................... 26

# Table of Authorities

## Cases

*Alexander v. Hedback,*
    718 F.3d 762 (8th Cir. 2013) ........................................................................ 24

*Apple Computer, Inc. v. Exponential Tech., Inc.*,
    C.A. No. 16315,
    1999 WL 39547 (Del. Ch. Jan. 21, 1999) .................................................... 12

*Bergman v. St. Paul Mut. Bldg. Ass'n No.1,*
    13 N.W. 120 (Minn. 1882) ............................................................................ 12

*Biondi v. Scrushy,*
    820 A.2d 1148 (Del. Ch. 2003) ................................................................. 7, 8

*Black v. NuAire, Inc.*,
    426 N.W.2d 203 (Minn. Ct. App. 1988) ...................................................... 20

*Burks v. Lasker,*
    441 U.S. 471 (1979) ...................................................................................... 25

*Cal. Pub. Emps' Ret. Sys. v. Coulter,*
    C.A. No. 19191,
    2002 WL 31888343 (Del. Ch. Dec. 18, 2002) ............................................. 14

*Cook v. McCullough,*
    No. 11 C 9119 (N.D. Ill.).................................................................................8

*Diedrick v. Helm,*
    14 N.W.2d 913 (Minn. 1944) ........................................................................ 12

*Drilling v. Berman,*
    589 N.W.2d 503 (Minn. Ct. App. 1999) ...................................................... 17

*Enter. Bank v. Magna Bank of Mo.*,
    92 F.3d 743 (8th Cir. 1996) .......................................................................... 25

*Evans v. Paulson,*
    No. Civ. 05-1818 (PAM/JSM),
    2007 WL 1549242 (D. Minn. May 24, 2007) ........................................ 19, 25

*Foy v. Klapmeier*,
992 F.2d 774 (8th Cir. 1993)) ........................................................................... 19

*Hasan v. CleveTrust Realty Investors*,
729 F.2d 372 (6th Cir. 1984). .................................................... 17, 18, 19, 25

*Holmstrom v. Coastal Indus., Inc.,,*
645 F. Supp. 963 (N.D. Ohio 1984).  ............................................................. 20

*In re Baycol Prods. Litig.*,
616 F.3d 778 (8th Cir. 2010) ......................................................................... 25

*In re Brocade Commc'ns Sys., Inc. Derivative Litig.*,
No. C 05-2233 (N.D. Cal.) ................................................................................ 8

*In re Health South Corp. S'holders Litig.*,
847 A.2d 1121 (Del. 2004) ............................................................................... 7

*In re Par Pharm., Inc. Derivative Litig.*,
750 F. Supp. 641 (S.D.N.Y. 1990) ............................................................... 10

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
754 N.W.2d 544 (Minn. 2008) ..............................................................*passim*

*Janssen v. Best & Flanagan*,
662 N.W.2d 876 (Minn. 2003) ..............................................................*passim*

*Joy v. North*,
692 F.2d 880 (2d Cir. 1982) ......................................................................... 19

*Lewis v. Boyd*,
838 S.W.2d 215 (Tenn. Ct. App. 1992) ........................................................ 17

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
No. Civ. 08-6324 (PAM/AJB) (D. Minn.) ................................................... 18

*Nat'l Commc'ns Ass'n, Inc., v. AT & T Corp.*,
238 F.3d 124 (2d Cir. 2001) ......................................................................... 11

*Prof'l Mgmt. Assocs., Inc. v. Coss*,
574 N.W.2d 107 (Minn. Ct. App. 1998) ...................................................... 15

iii

*Ryan v. Gifford*,
    918 A.2d 341 (Del. Ch. 2007) ................................................... 14

*Sanders v. Wang*,
    C.A. No. 16640,
    1999 WL 1044880 (Del. Ch. Nov. 8, 1999) ................................ 14

*Toretta v. Lachinski*,
    No. A12-0779,
    2013 WL 491523 (Minn. Ct. App. Feb. 11, 2013) ................. 7, 8, 9

*Watts v. Des Moines Register & Tribune*,
    525 F. Supp. 1311 (S.D. Iowa 1981) ......................................... 25

**Statutes**

MINN. STAT. § 302A.241 ..................................................... *passim*

MINN. STAT. § 302A.251 ................................................. 12, 14, 15

MINN. STAT. § 302A.461 ........................................................... 4

MINN. STAT. § 302A.521 ................................................. 12, 14, 15

**Rules**

FED. R. CIV. P. 12(b)(6) ......................................................... 24

FED. R. CIV. P. 23.1 ...................................................... 3, 5, 24, 25

FED. R. CIV. P. 56 ............................................................ 2, 25

MINN. R. CIV. P. 63.02 .......................................................... 16

## INTRODUCTION

*Janssen* and *UnitedHealth*[1] set forth three bedrock principles of Minnesota's business judgment rule as applied in the context of shareholder derivative litigation.

First, to claim protection under the rule, a special litigation committee ("SLC") must have plenary, binding authority "to control the litigation." *See Janssen*, 662 N.W.2d at 884. Courts give *no* deference to the decision of a conflicted board "that never attempted to create an independent SLC in the first place." *UnitedHealth*, 754 N.W.2d at 554. Here, Nominal Defendant Medtronic, Inc.'s board (the "Board") delegated to the SLC only the authority to *recommend* whether to pursue the derivative claims alleged in Plaintiff Charlotte Kokocinski's amended complaint (the "Complaint") and the related proceedings. *See* Dkt. No. 65-1 at 1. The SLC has *no* authority to *pursue* the claims. *See id.* The conflicted Board[2] retains the ultimate authority to accept or reject the SLC's recommendation. The SLC's lack of plenary authority is fatal to the pending motions.[3]

Second, the SLC bears the burden of establishing that its members, Professor John H. Matheson and the Honorable George F. McGunnigle, "possess[] a disinterested independence." *UnitedHealth*, 754 N.W.2d at 559. But the SLC cannot meet this burden. Under Minnesota law, the SLC members are deemed directors. *See* MINN.

---

[1] *Janssen v. Best & Flanagan*, 662 N.W.2d 876 (Minn. 2003); *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 754 N.W.2d 544 (Minn. 2008).

[2] It is undisputed that the Board is conflicted because all but one Board member are named as defendants in the related derivative proceedings. *See* Dkt. No. 65-1 at 1.

[3] Pending before the Court are three motions to dismiss (Dkt. Nos. 61, 69, 76) by the SLC, Medtronic, and the individual defendants (the latter two collectively referred to as "Defendants"). All three motions rely exclusively on the SLC report to seek dismissal of the Complaint with prejudice based on the business judgment rule.

STAT. § 302A.241, subd. 7. The SLC members must therefore obey Medtronic's bylaws, which mandate that directors be paid a "fixed sum . . . per meeting attended or [a] fixed annual sum." *See* Declaration of Francis A. Bottini, Jr. ("Bottini Decl.") Ex. 1. In violation of Medtronic's bylaws, however, the SLC members received compensation for their services on an hourly basis at "their normal hourly rates charged in their practices" as lawyers. *Id*. Ex. 2. This precludes the SLC members from satisfying their burden to establish disinterested independence.

Third, the SLC also bears the burden to demonstrate that "the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith." *UnitedHealth*, 754 N.W.2d at 561. But the SLC report (Dkt. No. 65-2) fails to show that the SLC has fully informed itself of all the subjects raised in Kokocinski's Complaint, including Medtronic's $2.8 billion stock repurchase program, the alleged self-dealing involving incentive compensation, and the $100 million cash trust to cover director liability. Nor does the report identify any concrete facts or evidence to support the SLC's conclusion that pursuing the derivative claims is not in Medtronic's best interests. Replete with generalized and conclusory statements, the SLC report cannot pass muster under *UnitedHealth* to show an adequate investigation pursued in good faith.

All told, the SLC's recommendation to seek dismissal of this action is entitled to *no* deference. Minnesota law allows "no opportunity to rectify any deficiencies" in an SLC report. *UnitedHealth*, 754 N.W.2d at 559. The Court should deny the motions.

In the alternative, the Court should defer consideration of the motions under Federal Rule of Civil Procedure 56(d) and allow Kokocinski to conduct discovery.

2

## PROCEDURAL BACKGROUND

### I.    Kokocinski's Initial Complaint

In March 2012, Kokocinski brought this shareholder derivative action against Medtronic's officers and directors[4] for violations of federal proxy laws, breaches of fiduciary duties, corporate waste, and unjust enrichment.  Dkt. No. 1 ¶¶ 197-220.  These claims arose from the Individual Defendants' misconduct between November 2006 and the present relating to the INFUSE Bone Graft ("Infuse"), a major medical device manufactured and marketed by Medtronic.  *Id.* ¶¶ 2, 37.[5]  Specifically, the Individual Defendants caused Medtronic to issue false and misleading statements about the revenues from Infuse sales.  *Id.*  ¶¶ 1, 6.  They also caused Medtronic to repurchase $2.8 billion of its common stock at inflated prices.  *Id.* ¶ 7.  Based on these allegations, Kokocinski sought damages and injunctive relief on Medtronic's behalf.

Defendants moved to dismiss the complaint under Rule 23.1, arguing that Kokocinski failed to plead demand futility.  On March 25, 2013, the Court granted the motions.  Dkt. No. 23 at 30.  Granting leave to amend, the Court "urge[d] [Kokocinski] to consider exercising her statutory right to examine Medtronic's books and records in order to potentially bolster her allegations [of demand futility]."  *Id.* at 2 n.1.

---

[4] These Individual Defendants are Arthur D. Collins, Jr., William A. Hawkins, Gary Ellis, Richard H. Anderson, David Calhoun, Victor J. Dzau, Shirly Ann Jackson, James T. Lenehan, Denise M. O'Leary, Kendall J. Powell, Robert C. Pozen, Jean-Pierre Rosso, Jack W. Schuler, Michael R. Bonsignore, Gordon M. Sprenger, William R. Brody, and Omar Ishrak.

[5] Similar allegations formed the basis for *Minneapolis Firefighters' Relief Association v. Medtronic, Inc.*, No. 08-cv-6324, a securities-fraud class action in this District (the "Securities Class Action"), which was settled for $85 million in 2012.

**II.    The Writ Proceedings in State Court**

Following this Court's suggestion, Kokocinski served a shareholder inspection demand upon Medtronic on April 5, 2013. Kokocinski sought to inspect the records of proceedings of shareholders and directors. *Id.* at 1. She also requested documents relating to the Board and management's conduct relating to Infuse, including minutes and Board packages from Board meetings between 2006 and 2010, and the directors' communications relating to the marketing and use of Infuse.

Upon Medtronic's refusal to comply with the demand, Kokocinski brought a motion to compel before the magistrate judge. Denying the motion, the magistrate judge held that the proper venue for the motion to compel lied in state court. *See* Dkt. No. 40.

On August 1, 2013, Kokocinski filed a petition with the District Court of the State of Minnesota, County of Hennepin seeking a writ of *mandamus* compelling Medtronic to comply with her inspection demand. The state court held a hearing on the petition on September 18, 2013. On December 17, 2013, the State Court granted Kokocinski's petition and ordered Medtronic to produce certain documents for inspection under MINN. STAT. § 302A.461.

Between January and April 2014, Medtronic produced over 40,000 pages of documents in compliance with the state court order. Kokocinski reviewed those documents. To allow sufficient time for the document review, Kokocinski sought, and the magistrate judge granted, multiple extensions for the deadline to file the amended complaint.

### III.    Kokocinski's Amended Complaint

On April 23, 2014, Kokocinski filed the amended Complaint.  The 285-paragraph Complaint included detailed facts, obtained from the inspection demand, regarding the Individual Defendants' knowledge about the problems associated with Medtronic's marketing and use of Infuse.  *See* Compl. ¶¶ 39-42, 73, 97-102, 114-124, 150-76, 180-83.

In addition to bolstering her demand-futility allegations, Kokocinski improved her allegations regarding Medtronic's $2.8 billion stock repurchase program.  *See id.* ¶¶ 210-212.  She also added two sets of allegations.  First, she alleged that the Individual Defendants breached their fiduciary duties by forming a $100 million cash trust to protect themselves and by failing to procure traditional directors and officers liability insurance. *Id.* ¶¶ 169-76.  Second, she alleged that Medtronic improperly issued incentive compensation to Defendants Ishrak, Hawkins, and Ellis, calculated based on the exclusion of the $90 million settlement costs from expenses in the relevant year.  *See id.* ¶¶ 219-22, 242, 261.

Six weeks after the filing of the Complaint, the SLC issued its report recommending that this action be dismissed.  *See* Dkt. No. 65-2.

### IV.    The Pending Motions

Though not a party to this action, the SLC filed a motion under Rule 23.1, seeking dismissal of the Complaint with prejudice based solely on the business judgment rule. Dkt. No. 61.  The Individual Defendants and Medtronic filed two motions, seeking the same relief.  Dkt. Nos. 69, 74.  None of the motions challenges the sufficiency of the Complaint.  As discussed below, these motions are meritless and should be denied.

**ARGUMENT**

**I.    *Janssen* and *UnitedHealth* Permit *No Deference* to a Conflicted Board of Directors That Never Attempted to Create an Independent SLC**

The SLC is entitled to no protection of the business judgment rule set forth in *Janssen* and *UnitedHealth* because, under the Board's enabling resolutions, the SLC lacks plenary, binding authority to decide whether to pursue the derivative claims alleged in this action. *See* Dkt. No. 65-1; *see also* MINN. STAT. § 302A.241, subd. 1 (an SLC's authority is limited "only to the extent provided in the [enabling] resolution"). Nor does the SLC have the authority to pursue these claims. As discussed below, this inherent limitation of the SLC's authority is fatal to its motion to dismiss.

Under Minnesota law, the business judgment rule protects only those SLC members who are disinterested and independent. *See Janssen*, 662 N.W.2d at 884. "The key element [of a disinterested and independent SLC] is that the board delegates to a committee of disinterested persons the *board's power to control the litigation*." *Id.* (emphasis added). "A mere advisory role of the [SLC] fails to bestow a sufficient legitimacy to warrant deference to the [SLC's] decision by the court." *Id.* In *UnitedHealth*, the Minnesota Supreme Court affirmed *Janssen*'s denial of any "deference to an improperly constituted SLC." *UnitedHealth*, 754 N.W.2d at 554 (citing *Janssen*, 662 N.W.2d at 888, with approval). An SLC is "improperly constituted" if it lacks authority – by design – to make a binding decision on the company's behalf to pursue derivative claims against members of a "conflicted board." *Id.* ("no deference is to be given to the decision of a conflicted board of directors that never attempted to create an independent SLC in the first place").

6

A review of the Board's resolutions reveals that the SLC here was *improperly constituted* because the Board *never* intended to form a truly independent SLC – one that possesses plenary authority to pursue – as opposed to merely investigate – the derivative claims at issue. *See Biondi v. Scrushy*, 820 A.2d 1148, 1165, 1167 (Del. Ch. 2003) (refusing to stay derivative action due to questions about whether the SLC had plenary authority because board resolution "seemed to limit the [SLC's] authority to prevent the company from seeking dismissal").[6]  In the August 23, 2012 resolution, the Board designated the SLC with "complete power and authority to investigate the Derivative Claim and analyze the legal rights or remedies of the Company and determine whether those rights or remedies should be pursued."  Dkt. No. 65-1 at 1.

Nothing in the resolution requires that the decision of the SLC as to whether to pursue the derivative claims at issue is *final and binding* on the Board.  *Cf. Toretta v. Lachinski*, No. A12-0779, 2013 WL 491523, at *9 (Minn. Ct. App. Feb. 11, 2013) (affording deference to an SLC whose enabling resolution provided that "its authority shall be binding on the [c]ompanies").  Nor does the resolution authorize the SLC to *pursue* the derivative claims, should it decide to do so.  And the subsequent resolutions (dated December 6, 2012, June 20, 2013, and August 22, 2013) broadened only the scope of the *investigation* but *not* the scope of the SLC's *authority*.  *See* Dkt. No. 65-1. Minnesota law limits the SLC's authority "only to the extent provided in the resolution." MINN. STAT. § 302A.241, subd. 1.  As a result, *all* that the SLC is authorized to do is to

_____

[6] *Aff'd sub nom. In re Health South Corp. S'holders Litig.*, 847 A.2d 1121 (Del. 2004).

7

determine whether the derivative claims should be pursued and make a *recommendation* to the Board based on that determination.

This inherent limitation of the SLC's authority stands in stark contrast to that of a typical SLC formed in similar situations. For example, in *Cook v. McCullough*, No. 11 C 9119 (N.D. Ill.), a shareholder derivative action on behalf of Career Education Corporation, the board resolution stated that "the SLC shall be delegated the *full and exclusive authority and power* to [investigate the underlying derivative claims], *take any and all actions* as the SLC deems appropriate and in the best interest of the Company regarding what, if any, actions the Company should undertake with respect to the findings of the SLC." Bottini Decl. Ex. 3 at 1 (emphases added). Similarly, in *In re Brocade Communications Systems, Inc. Derivative Litigation*, No. C 05-2233 (N.D. Cal.), the board authorized the SLC "to *pursue or resolve* [all derivative claims] and any other matters the [SLC] deems necessary or appropriate to its decisions relating to the [d]erivative [l]awsuits." *Id*. Ex. 4 at 1 (emphasis added).

By comparison, the enabling resolutions here provide the SLC with neither plenary nor binding authority to *pursue* the derivative claims. This is fatal to the SLC's motion to dismiss because its decision is entitled to *no* deference under *UnitedHealth*.

On this point, *Biondi* and *Toretta* are instructive. In *Biondi*, the court denied the SLC's motion to stay the derivative action pending its investigation because the resolution creating the SLC preserved the board's authority to seek dismissal of the action. 820 A.2d at 1155. The company made two arguments to save the SLC's motion to stay – to no avail. First, the company argued that the resolution contained a clause

8

stating that the SLC's decision "shall be final . . . [and] binding upon the [c]ompany." *Id.* at 1156. Rejecting this argument, the court considered the clause as a mere source of confusion. *Id.* Second, in an attempt to dispel the court's concerns, the company amended its SLC charge "*in advance of the SLC's filing of its reply brief*" by clarifying the SLC's binding authority and by deleting the references to the board's retention of authority to seek dismissal. *Id.* (emphasis original). The court, however, rejected this amendment as tardy and found it insufficient to cure other defects of the SLC. *See id.* Similarly, the shareholder plaintiff in *Toretta* argued that the SLC was not entitled to deference under *UnitedHealth* because it only had authority to make "a recommendation rather than a directive to the board on whether to pursue derivative claims." 2013 WL 491523, at *9. The Minnesota Court of Appeals rejected this argument *only* after finding that the resolution establishing the SLC delegated "'the complete power and authority' of the board to the SLC" and expressly stated that the SLC's decision was "binding." *Id.*

In contrast, *no* language in the Board resolutions here can save the fatal lack of plenary authority on the part of the SLC. The practical consequence of this defect is as troubling. As Defendants admit, the Board is conflicted. *See* Dkt. No. 65-1 at 1 (stating that all but one Board member are named as defendants). Although in appearance the SLC has the authority to determine whether Medtronic should pursue the claims alleged in the underlying shareholder demands and complaints, that authority is not binding on Medtronic or its Board. *See id.* As a result, the admittedly conflicted Board retains the ultimate authority to decide whether and how to pursue the claims. *See id.*

The Board's retention of the ultimate authority is troubling because it in effect

9

keeps the SLC under the Board's direction and control. *See Janssen*, 662 N.W.2d at 888 (giving no deference to an SLC's decision because it "acted more like a legal advisor than a neutral decision maker"). For example, suppose the SLC here recommends to the Board that the derivative claims be pursued. Under the enabling resolution, the SLC has no authority to pursue the claims or require the Board to do so. And the conflicted Board is free to disregard the SLC's recommendation and seek dismissal of this action. This result directly contravenes the notion of an independent SLC that is the premise of *UnitedHealth* and the design of the Minnesota Business Corporation Act. *UnitedHealth*, 754 N.W.2d at 550 (stating that MINN. STAT. § 302A.241, subd. 1 implies that "an SLC is not subject to a board's direction and control").

This inherent limitation of the SLC's authority here precludes the SLC from invoking the deference based on the business judgment rule set forth in *Janssen* and *UnitedHealth*. For the conflicted Board "never attempted to create an independent SLC in the first place." *UnitedHealth*, 754 N.W.2d at 554. In *In re Par Pharmaceutical, Inc. Derivative Litigation*, the court denied an SLC's motion to dismiss the derivative action for the very reason that "a mere advisory role of the [SLC] fails to bestow sufficient legitimacy on the [b]oard's decision to warrant deference to the [b]oard by [the court]." 750 F. Supp. 641, 647 (S.D.N.Y. 1990) (citing both Delaware and New York law). Here too, the Court should deny the motions to dismiss as without merit. *See also Janssen*, 662 N.W.2d at 888.

Because the Board and the SLC are barred from "rectify[ing] any deficiencies," *UnitedHealth*, 754 N.W.2d at 559, this action should be allowed to proceed on the merits.

10

## II.    The SLC Has Failed to Carry Its Burden to Demonstrate That Its Members Are Disinterested and Independent and That Its Investigative Procedures and Methodologies Were Adequate, Appropriate, and Pursued in Good Faith

To claim protection under Minnesota's business judgment rule, the SLC must satisfy two prerequisites:  (1) "the members of the SLC possessed a disinterested independence"; and (2) "the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith."  *UnitedHealth*, 754 N.W.2d at 561. The burden to satisfy these prerequisites falls on the SLC because it has "easier access to relevant information."  *Id.* (quoting *Nat'l Commc'ns Ass'n, Inc., v. AT & T Corp.*, 238 F.3d 124, 130 (2d Cir. 2001)).  By contrast, Minnesota law imposes *no* burden on Kokocinski "to prove a negative – that the SLC did not act in good faith or was not independent."  *Id*.  Here, the SLC has failed to carry its burden on *both* prerequisites.

### A.    The Members of the SLC Are Interested Because They Were Paid in a Manner That Violates Medtronic's Bylaws

As the SLC members recognize, the bedrock principle of a proper SLC process requires that the members of any SLC be independent and disinterested.  *See* Affidavit of John H. Matheson ("Matheson Aff.") ¶ 4 (noting that "[b]ecause disinterested independence is the touchstone of a special litigation committee, and a special litigation committee should avoid even the appearance that a member lacks independence or disinterest, Governor Leavitt resigned from the SLC").  Here, the SLC members have failed to establish their disinterested independence because they were compensated for serving on the SLC in a manner that violates Medtronic's bylaws.

As recognized in the August 23, 2012 resolution, Messrs. Matheson and McGunnigle, after being appointed to the SLC, "are considered members of the Board."

11

Dkt. No. 72-2 at 1.  The Minnesota statute authorizing the use of SLCs by Minnesota

corporations like Medtronic explicitly says so.  *See* MINN. STAT. §302A.241, subd. 7

("Committee members are deemed to be directors for purposes of sections 302A.251,

302A.255, and 302A.521."); *see also In re UnitedHealth*, 754 N.W.2d at 553 (making

same point and quoting statute for purpose of indicating that individuals who serve on

Minnesota SLCs are entitled to the protection of the business judgment rule since they are

"deemed to be directors.").

As Medtronic's directors for all practical and *legal* purposes, Messrs. Matheson

and McGunnigle must obey Medtronic's bylaws.  *Diedrick v. Helm*, 14 N.W.2d 913, 921

(Minn. 1944) ("By-laws have the same force and effect as provisions of the charter or

articles of incorporation and must be obeyed by the corporation, its directors, officers,

and stockholders.") (collecting cases).  This century-old rule requiring absolute

compliance with corporate bylaws is basic, fundamental, and beyond dispute.  *Id.* at 920-

21 ("The office of a by-law is to establish rules for the internal government of the

corporation.") (citing *Bergman v. St. Paul Mut. Bldg. Ass'n No.1*, 13 N.W. 120 (Minn.

1882)).  Violations of bylaws are considered *ultra vires* acts under Minnesota law

because such conduct exceeds the scope of the Board's authority.  *See Bergman*, 13 N.W.

at 121.[7]

Accordingly, Messrs. Matheson and McGunnigle must be compensated in

---

[7] "Void acts, acts that are *ultra vires*, fraudulent, gifts, or waste, are legal nullities
incapable of cure." *Apple Computer, Inc. v. Exponential Tech., Inc.*, C.A. No. 16315,
1999 WL 39547, at *6 (Del. Ch. Jan. 21, 1999).

accordance with Medtronic's bylaws. Section 2.9 of Medtronic's bylaws governs compensation of directors, and states that directors may only be compensated in two ways: a set annual retainer or a set amount of money per meeting attended. That section states: "Directors who are not salaried officers of the corporation shall receive such fixed sum and expenses per meeting attended or such fixed annual sum or both as shall be determined from time to time by resolution of the Board of Directors." *See* Bottini Decl. Ex. 1. As reflected in the text of Section 2.9, this compensation method is mandatory. *See id.* Thus, hourly-based compensation is prohibited. *See id.*

In violation of this prohibition, however, Messrs. Matheson and McGunnigle were paid, as admitted by the SLC's counsel, on an hourly basis at "their normal hourly rates charged in their practices." *See* Bottini Decl. Ex. 2.[8] Mr. Matheson was compensated based on his hourly rate as "a practicing lawyer" at the law firm of "Kaplan, Strangis and Kaplan, P.A.," and Mr. McGunnigle as a retired judge working as "a mediator, arbitrator or special master." Matheson Aff. ¶ 10; McGunnigle ¶ 12. While the SLC's counsel refused to identify the total amount of compensation paid to the two SLC members, such amount undoubtedly dwarfed the normal annual compensation received by Medtronic's directors for at least two reasons. First, as lawyers with decades of experience, Messrs. Matheson and McGunnigle have high hourly rates. Second, as indicated in their affidavits, Messrs. Matheson and McGunnigle spent hundreds if not thousands of hours

---

[8] Exhibit 2 is a July 10, 2014 letter from Steve W. Gaskins, Esq., counsel for the SLC, to Kokocinski's counsel, responding to counsel's request for information regarding the SLC members' compensation. *See* Bottini Decl. ¶¶ 2-3.

serving as SLC members, meeting with counsel on over 70 occasions, interviewing 60 individuals, reviewing tens of thousands of pages of documents (at a minimum), and traveling to a number of cities across the country. *See* McGunnigle Aff. ¶¶ 26-30; Matheson Aff. ¶¶ 23-32. Regardless of the amount of compensation paid to the SLC members, the hourly-based compensation undeniably violates Medtronic's bylaws.

Having been paid in a manner that violates Medtronic's bylaws, the SLC members are obviously interested because they received an improper financial benefit from serving on the SLC. *See, e.g.*, MINN. STAT. § 302A.251, subd. 4(d) (eliminating a director's limitation of liability in "any transaction from which the director derived an improper personal benefit").[9] Moreover, such interestedness is reinforced by the fact that the Minnesota statute authorizing the use of SLCs specifically provides that, if the compensation paid to the SLC members is challenged, the SLC members' entitlement to indemnification will be determined by Defendants here – the very people the SLC is tasked with investigating, and who created the conflict by improperly agreeing to pay the SLC members an hourly rate for their services. *See* MINN. STAT. § 302A.521, subd. 2.

An analysis of the statute itself, as well as *UnitedHealth*, makes this clear. Again,

---

[9] Case law is clear that directors are not entitled to the protection of the business judgment rule when they exceed their authority by engaging in *ultra vires* acts. *See Ryan v. Gifford*, 918 A.2d 341, 354 (Del. Ch. 2007) (denying protection of the business judgment rule to the members of the stock option committee who issued backdated options in contravention of the stock option plan); *Sanders v. Wang*, C.A. No. 16640, 1999 WL 1044880, at *1 (Del. Ch. Nov. 8, 1999) (directors exceeded authority by awarding stock options beyond what was provided in the stock plan); *Cal. Pub. Emps' Ret. Sys. v. Coulter*, C.A. No. 19191, 2002 WL 31888343, at *11 (Del. Ch. Dec. 18, 2002) (denying protection of the business judgment rule to directors who failed to obtain shareholder approval, as required by stock plan, before re-pricing stock options).

SLC members are deemed directors, and are therefore entitled to the protection of the business judgment rule and are entitled to be indemnified by the corporation for all acts and omissions committed while the person served as a director, unless the conduct is taken in bad faith or unless the director receives an improper financial benefit. *See* MINN. STAT. § 302A.241, subd. 7, § 302A.251, § 302A.521; *see also UnitedHealth*, 754 N.W.2d at 553. Significantly, if the SLC members' compensation is challenged, any dispute over the SLC members' entitlement to indemnification will be determined by the very defendants in this lawsuit – the people they are tasked with investigating. MINN. STAT. § 302A.521, subd. 6. Because the statute allows the full Board to make a determination of the SLC members' entitlement to indemnification, even where, as here, those Board members are defendants in the underlying lawsuit, the defendants in this case have the ability to ensure that the SLC members are indemnified for the improper compensation that the Board authorized be paid to the SLC members for their service on the SLC. *See* MINN. STAT. § 302A.521, subd. 6(3).

Defendants in this case established the SLC, and in so doing created improper financial incentives for the SLC members to be paid very significant sums of money for serving on the SLC. *See Prof'l Mgmt. Assocs., Inc. v. Coss*, 574 N.W.2d 107, 111 (Minn. Ct. App. 1998) (finding that several directors lacked independence because they depended on one another for determining their compensation). They allowed the SLC members to bill Medtronic on an hourly basis. Bottini Decl. Ex. 2. Because that payment mechanism violates Medtronic's bylaws, the SLC members are interested in this matter. *See Prof'l Mgmt.*, 574 N.W.2d at 111 (finding that directors lacked independence

15

under Delaware law because they were beholden to those who are "in a position to exert considerable influence over [their compensation]").  As a result, the SLC's motion to dismiss, which relies entirely on the SLC Report to advocate for complete absolution of the Defendants and dismissal of this lawsuit with prejudice, must be denied.  *See UnitedHealth*, 754 N.W.2d at 561.

As the Minnesota Supreme Court made clear in *UnitedHealth*, "the board bears the burden of proof to establish that the business judgment rule has been satisfied" and that a board has only "one opportunity to properly convene an SLC, which itself has only one opportunity to conduct a proper investigation." *Id.* at 554.  Here, Medtronic and the SLC do not – and cannot – satisfy their burden of proof to establish that the SLC was properly convened because the evidence establishes that the SLC members were compensated in a manner directly contrary to Medtronic's bylaws, thus making the SLC members interested and subject to a claim by Medtronic or its shareholders to return the improper compensation.  Having failed in its "one attempt" to properly convene an SLC, Medtronic's motion to dismiss must be denied and this lawsuit should move forward to the discovery phase.[10]

---

[10] Mr. McGunnigle is also interested because he holds 450 shares of Medtronic stock in a revocable trust.  McGunnigle Aff. ¶ 7.  Ownership of stock in a company being sued is sufficient to render a judge presiding over a case interested and/or subject to recusal under many states' laws.  *See* MINN. R. CIV. P. 63.02.  And whether or not this creates an actual conflict, it creates at least an "appearance that the member lacks independence or disinterest" such that the person should recuse himself from service on the SLC, as Governor Leavitt did.  McGunnigle Aff. ¶ 4.  If Governor Levitt resigned from the SLC due to his service in the federal agency, despite any indication that he had any involvement with approval of Medtronic devices, then Mr. McGunnigle's ownership of stock in Medtronic also constitutes a basis for an appearance of interestedness.

**B.    The SLC Report Fails to Show Adequate Investigative
Procedures and Methodologies Pursued in Good Faith**

**(1)    The SLC's Procedures Were Inadequate Because the
Investigation Fails to Cover All Subjects Raised by Kokocinski**

*UnitedHealth* requires this Court to conduct a "robust" and "careful scrutiny of an

SLC's . . . investigative procedures." *UnitedHealth*, 754 N.W.2d at 558.  The factors

relevant to the adequacy of the investigation include:

> (1) the length and scope of the investigation, (2) the
> committee's use of independent counsel or experts, (3) the
> corporation's or the defendants' involvement, if any, in the
> investigation, and (4) the adequacy and reliability of the
> information supplied to the committee.

*Drilling v. Berman*, 589 N.W.2d 503, 509 (Minn. Ct. App. 1999) (quoting *Lewis v. Boyd*,

838 S.W.2d 215, 224 (Tenn. Ct. App. 1992)).   Key to this inquiry is whether the SLC

has fully informed itself with respect to all aspects of the underlying claims, including the

company's "economic health," "relations between [board members]," "public relations,

and other factors common to reasoned business decisions."  *See Janssen*, 662 N.W.2d at

889 (identifying interviews of witnesses as "a fundamental task in reaching an informed

decision about the merits of [the underlying] complaints").  An investigation is

inadequate if the SLC fails "to demonstrate that the areas and subjects examined are

reasonably complete and that there has been a good faith inquiry into those areas and

subjects."  *See Hasan v. CleveTrust Realty Investors*, 729 F.2d 372, 378 (6th Cir. 1984).

Here, the SLC report cannot pass muster.  A review of the SLC report reveals that

the SLC has failed to show an adequate investigation with regard to at least three

important subjects raised in Kokocinski's Complaint.  First, Kokocinski asserts a

derivative claim for breaches of fiduciary duties based on Medtronic's $2.8 billion stock repurchase program.  *See* Compl. ¶¶ 6, 208-16, 271-76.  Although the SLC report mentions the allegations regarding stock repurchases, there is *no* indication that the SLC conducted an adequate investigation based on the allegations.  *See* Dkt. No. 65-2 at 2. Any examination by the SLC of the securities-fraud claims is no substitute for an adequate investigation of Kokocinski's claim based on the stock repurchases because her claim is based on different allegations and seeks substantial recovery for Medtronic. Thus, the SLC report is insufficient to show an adequate investigation.  *See Hasan*, 729 F.2d at 378 (finding an investigation inadequate where the SLC failed to interview key witnesses).

Second, Kokocinski alleges that the directors breached their fiduciary duties by forming a $100 million cash trust to protect themselves and by failing to procure traditional directors and officers liability insurance.  *See* Compl. ¶¶ 169-76.  The alleged misconduct caused Medtronic to suffer damages in the amount of $90 million relating to the settlement of the Securities Class Action.  The SLC report fails to show that the investigation regarding Kokocinksi's allegations is adequate.

Third, nothing in the SLC report indicates that the SLC examined the allegations of improper incentive compensation Kokocinski added on April 23, 2014, as part of her amendments to the Complaint.  *See* Compl. ¶ 219-22, 242, 261.  Based on nonpublic information obtained through a books-and-records inspection, Kokocinski alleges that Medtronic improperly issued incentive compensation to Defendants Ishrak, Hawkins, and Ellis, calculated based on the exclusion of the $90 million settlement costs from expenses

18

in the relevant year.  *See id.*  Because this is a self-dealing claim, involving a breach of the duty of loyalty, the SLC's failure to properly investigate these allegations is troubling, especially in light of the SLC report's acknowledgment that directors are "personally liable for all damages caused by self-dealing in breach of [their] fiduciary obligations." Dkt. No. 65-2 at 58 (quoting *Foy v. Klapmeier*, 992 F.2d 774, 780 (8th Cir. 1993)).

Aside from the subjects raised in Kokocinski's Complaint, Humana, Inc. filed a complaint on May 30, 2014 – less than two weeks before the SLC issued its report – against Medtronic, Inc. and its subsidiary for violations of the Racketeer Influenced and Corrupt Organizations Act in connection with the off-label use of Infuse.  *See* Bottini Decl. Ex. 5.  Nothing in the SLC report shows that the SLC examined that complaint.

In addition to the failure to investigate the foregoing subjects, the report lacks sufficient particularity with regard to the adequacy of the SLC's examination.  For example, the SLC report lacks supporting documents.  *See Evans v. Paulson*, No. Civ. 05-1818 (PAM/JSM), 2007 WL 1549242, at *1 (D. Minn. May 24, 2007) (approving a 40-page SLC report accompanied by "voluminous attachments"); *see also Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) (rejecting the argument that a derivative suit can be dismissed "on the basis of secret documents" submitted by the SLC).  Nor does the SLC report disclose any potential conflicts of interest with regard to the experts.  *See* Dkt. No. 65-2 at 32-33.  These defects, viewed as a whole, render the SLC report insufficient to satisfy the burden set forth in *UnitedHealth*.  *See Hasan*, 729 F.2d at 379 (finding that the SLC's "investigation lacked the [requisite] thoroughness").

19

**(2)    The SLC Has Failed to Establish That Its Investigation Is Protected By the Business Judgment Rule**

Minnesota courts have consistently required that an SLC report set forth the basis for the SLC's decision to seek dismissal of pending derivative actions.  In *Black v. NuAire, Inc.*, the Minnesota court of appeals affirmed dismissal of derivative claims based on the SLC's cost-benefit analysis of the underlying claims.  *See* 426 N.W.2d 203, 206-07 (Minn. Ct. App. 1988).  Detailed and particularized, the SLC report in *Black* identified "one charge in the amended complaints" – an alleged deferred compensation agreement – that appeared "to hold out the prospect of significant benefit to the corporation if its damage allegations [ ] bore out." *Id*. at 206.  After outlining the "reasons for finding merit" to the claim based on the deferred compensation agreement, the SLC concluded that the reasons were "[in]sufficient" to justify litigation in light of the potential defenses and expenses.  *Id*. at 206-07.  The SLC further "found no substantiation or reasonable justification for other charges in the amended complaints." *Id*. at 207.

Despite its length of 69 pages, the SLC report "is devoid of factual findings to support the conclusions reached."  *Holmstrom v. Coastal Indus., Inc.*, 645 F. Supp. 963, 972 (N.D. Ohio 1984).  Nor does the report provide any bases for the SLC's recommendation that "it would not be in Medtronic's best interests to pursue [the derivative claims at issue here]."  *See* Dkt. No. 65-2 at 69.  For example, on pages 66 through 69 of its report, the SLC lists the factors it purportedly considered, including, among other things:

20

- "the significant financial expenditures required to litigate the claims, including Medtronic's obligations to indemnify and advance defense costs";

- "the exculpatory clause contained in Medtronic's corporate charter"; and

- "the applicability of the business judgment rule protecting the reasonably prudent, good faith decisions of corporate officers and directors."

*See* Dkt. No. 65-2 at 66. This list fails to provide any concrete facts or evidence collected from the SLC investigation. The Report fails to quantify the "financial expenditures required to litigate the claims" – a significant deficiency since litigation expenditures can always be described as "significant." *See id.* While the Report refers to an alleged "lack of evidence supporting a finding of liability against the officers and directors," it qualifies such conclusion by putting it "in the context of governing statutory and case law." *See id.* The Report does not reveal the weight of competing evidence, nor does the Report provide any estimate of the potential value of the derivative claims if they were successfully pursued. *See id.* All the Report says is that proving the derivative claims would be "difficult[]." *See id.* But such generalized, conclusory statements prevent the Court from being able to determine whether the SLC has conducted a good-faith investigation. *See Holmstrom*, 645 F. Supp. at 972 (refusing to "grant rubber stamp approval to the [recommendation of a company's litigation oversight committee]").

The SLC's report in this case is similar to the one in *Janssen*. After investigating claims for legal malpractice, the SLC in *Janssen* stated its findings in general terms:

> "[T]he totality of the materials reviewed does not support a finding that [defendant] committed legal malpractice in its handling of the [company's] affairs," and that "to spend money in the pursuit of a legal malpractice claim . . . would not be prudent use of the [company's] funds."

21

*Janssen*, 662 N.W.2d at 889. The Minnesota Supreme Court rejected the SLC's report as insufficient to demonstrate a "good faith" investigation because its conclusory findings failed to show that the SLC "had undertaken the careful consideration of all the germane benefits and detriments to [the company] that is indicative of a good faith business decision." *Id*. The Minnesota Supreme Court demanded a "more comprehensive weighing and balancing of factors":

> [A good faith investigation must] tak[e] into consideration how joining or quashing the lawsuit could affect [the company's] economic health, relations between the board of directors and members, [the company's] public relations, and other factors common to reasoned business decisions.

*Id.* Likening the SLC report to one of a lawyer's "evaluating the likelihood of a legal victory," the Minnesota Supreme Court found that the investigation "lacked the independence and good faith necessary to merit deference." *Id*.

*Janssen*'s reasoning applies here. Generalized and conclusory, the SLC report here omits any facts or reasons as to *why* the derivative claims are difficult to prove and unworthy of prosecuting – the "weighing and balancing" required by *Janssen*. *Id*. The SLC's report also fails to analyze or consider how Medtronic's joining or quashing Kokocinski's case could affect the Company's economic health, public relations, and other factors. All told, just like the SLC member who acted "more like a legal advisor than a neutral decision maker," *id*. at 888, the SLC here fails to show that it pursued the investigation in good faith. As a result, the SLC has failed to satisfy its burden of showing that its decision and report are entitled to deference.

This conclusion finds further support in the policy reasons behind the business

judgment rule.  As noted in *UnitedHealth*, market forces normally act to restrain director

misconduct and bad "business" decisions, yet judges are immune to such forces:

> [A]ny danger of bias in the SLC process is likely to be
> corrected by natural market forces.  Competition between
> firms provides even the most self-interested directors with a
> strong incentive to make good (*i.e.*, profitable) decisions;
> directors who prove themselves incapable of making
> profitable decisions will inevitably be replaced by others who
> are more capable.  Whereas "[m]arket forces work an
> imperfect Darwinian selection on corporate decision makers,
> no such forces constrain erring judges."  As a result of the
> relative inability of the market to rectify a court's erroneous
> business decision, "rational shareholders will prefer the risk
> of director error to that of judicial error."

*UnitedHealth*, 754 N.W.2d at 557-58 (internal citations and ellipses omitted).  Thus,

judicial deference to business judgment is warranted where disinterested executives

decide business matters in good faith.  *See id.*  Here, the SLC members – a former judge

and a law professor who have no business experience and have never served on

Medtronic's Board – are just like judges, who, as noted in *UnitedHealth*, "really are not

equipped either by training or experience to make business judgments because such

judgments are intuitive, geared to risk-taking and often reliant on shifting competitive

and market criteria."  *Id.* at 556.  Thus, the SLC's report is entitled to no deference.

The SLC's failure to carry its burden of establishing the two prerequisites under

*UnitedHealth* is fatal to the pending motions because the SLC has "no opportunity to

rectify any deficiencies."  *Id.* at 559 (quoting *Janssen*, 662 N.W.2d 889).  The Court

should deny the motions to dismiss and allow this action to "proceed on its merits."  *Id.*

### III. The Court Should Deny the Motions to Dismiss as Procedurally Improper or, in the Alternative, Convert the Motions to Ones for Summary Judgment and Allow Kokocinski an Opportunity to Conduct Discovery

Moving to dismiss the complaint "with prejudice," the Individual Defendants and the SLC invoke Rule 12(b)(6) and Rule 23.1.[11] But both rules are improper.

Rule 12(b)(6) allows a party to move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). It is axiomatic that a Rule 12(b)(6) motion addresses the pleading sufficiency of a complaint, and that, on a Rule 12(b)(6) motion, a court may review only the complaint and other matters integral to the claims or subject to judicial notice. *See Alexander v. Hedback*, 718 F.3d 762, 764 n.2, 765 (8th Cir. 2013). Here, the motions solely rely on the SLC report – a matter outside the pleadings – and, in fact, do not address the sufficiency of Kokocinski's complaint at all. Thus, the complaint cannot be dismissed under Rule 12(b)(6).

Nor does Rule 23.1 provide the proper basis for the motions. Subsections (a) and (b) of Rule 23.1 deal with the adequacy of representation of a derivative plaintiff, and the "[p]leading [r]equirements" regarding a pre-suit demand. FED. R. CIV. P. 23.1(a)-(b). Neither of these subsections has anything to do with a defense based on an SLC report. Subsection (c) deals with "[s]ettlement, [d]ismissal, and [c]ompromise." FED. R. CIV. P. 23.1(c). But this subsection applies only when the termination of the derivative action is "voluntary." *See id.* Subsection (c) is thus inapplicable here because the motions seek

---

[11] As the sole basis for seeking dismissal of this action with prejudice, all three motions rely on the SLC report. The Individual Defendants' motion cites Rule 12(b)(6), and the SLC's motion cites Rule 23.1. *See* Dkt. Nos. 61, 69. Medtronic's motion cites no procedural rules. *See* Dkt. No. 76.

24

dismissal over Kokocinski's objection. *See Burks v. Lasker*, 441 U.S. 471, 485 n.16 (1979) (finding Rule 23.1 inapplicable "where the plaintiffs' action [was] involuntarily dismissed by a court"). Accordingly, the SLC's reliance on Rule 23.1 is misplaced.

Rule 56 provides the proper procedural device for their motion. In fact, federal district courts, including one court in this District, have resolved similar motions under Rule 56. *See Evans*, 2007 WL 1549242, at *2 (Magnuson, J.).[12] To prevail on a Rule 56 motion, Defendants and the SLC must show that there are no disputed issues of material fact and that they are entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The Court must view the evidence and reasonable inferences in the light most favorable to Kokocinski. *See Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).

Because there has been no discovery in this action, the Court should defer consideration of the motions under Rule 56(d) to allow Kokocinski to take discovery.[13] As stated in the Bottini Declaration, Kokocinski is entitled to discovery with respect to the SLC's independence and investigation. Bottini Decl. ¶¶ 7-9.[14]

---

[12] *See also*, *e.g.*, *Watts v. Des Moines Register & Tribune*, 525 F. Supp. 1311, 1328-29 (S.D. Iowa 1981) (postponing decision pending discovery of factors influencing the SLC's decision); *Hasan*, 729 F.2d at 380 (reversing summary judgment in favor of the company).

[13] This Court "must apply federal rules, rather than state law, in determining the proper procedure." *See In re Baycol Prods. Litig.*, 616 F.3d 778, 785 (8th Cir. 2010). *UnitedHealth*, a state court decision, has *no* bearing on discovery in this Court. Nor does *UnitedHealth* (decided in a settlement context) control the level of judicial scrutiny on the SLC investigation here because the Court is considering motions to dismiss.

[14] In the event the Court denies Kokocinski an opportunity to conduct discovery, based on the arguments set forth above, the Court should still deny the motions because the SLC's decision is not entitled to protection under the business judgment rule, and because genuine issues of material fact exist regarding contested matters.

25

## CONCLUSION

For all the foregoing reasons, the Court should deny the motions to dismiss in their entirety.

Should the Court convert the motions to ones for summary judgment, the Court should allow Kokocinski an opportunity to conduct discovery with respect to (1) whether the members of the SLC possessed a disinterested independence; and (2) whether the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith.

Dated:  July 15, 2014                    Respectfully submitted,

                                         BOTTINI & BOTTINI, INC.
                                         Francis A. Bottini, Jr.
                                         (*pro hac vice*, CA Bar No. 175783)
                                         Albert Y. Chang
                                         (*pro hac vice*, NY Bar No. 4067492)

                                              s/ Francis A. Bottini, Jr.
                                         _____
                                              Francis A. Bottini, Jr.

                                         7817 Ivanhoe Avenue, Suite 102
                                         La Jolla, CA 92037
                                         Telephone:  (858) 914-2001
                                         Facsimile:   (858) 914-2002

                                         REINHARDT WENDORF
                                            & BLANCHFIELD
                                         Garrett D. Blanchfield, Jr.
                                         E1230 First National Bank Building
                                         332 Minnesota Street
                                         St. Paul, Minnesota 55101
                                         Telephone:  (651) 287-2100
                                         Facsimile:   (651) 287-2103

                                         *Attorneys for Plaintiff*
                                         *Charlotte Kokocinski*

26