United States Court of Appeals
For the Eighth Circuit
_____

No. 15-3519
_____

Charlotte Kokocinski, derivatively on behalf of Medtronic, Inc.

*Plaintiff - Appellant*

v.

Arthur D. Collins, Jr.; William A. Hawkins; Gary Ellis; Richard H. Anderson; David L. Calhoun; Victor J. Dzau; Shirley Ann Jackson; James T. Lenehan; Denise M. O'Leary; Kendall J. Powell; Robert C. Pozen; Jean-Pierre Rosso; Jack W. Schuler; Michael R. Bonsignore; Gordon M. Sprenger; William R. Brody; Omar Ishrak; Medtronic, Inc.

*Defendants - Appellees*

Special Litigation Committee

*Movant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 19, 2016
Filed: March 1, 2017
_____

Before GRUENDER, BEAM, and SHEPHERD, Circuit Judges.
_____

BEAM, Circuit Judge.

Charlotte Kokocinski brought a shareholder derivative action on behalf of Medtronic, Inc., against current and former directors and officers of Medtronic, and against Medtronic as a nominal defendant. The district court[1] dismissed the action on the basis of a report by a special litigation committee, and we now affirm.

## I.   BACKGROUND

From roughly 2006 to 2008 Medtronic was the subject of a well-publicized controversy involving whistle-blower lawsuits, settlement and corporate-compliance-and-governance agreements with federal agencies, and a congressional and media investigations. These events stemmed from Medtronic's alleged improper promotion to physicians of the "off-label" use[2] of its "Infuse" product, a surgically implanted medical device that stimulates bone growth. Infuse was also the subject of a 2008 Public Health Notification by the Food and Drug Administration (FDA). Medtronic's revenue and share price suffered as a result of this negative publicity. In 2012, without first making a demand on Medtronic, Kokocinski brought a shareholder derivative action against Medtronic directors and officers (the individual defendants) seeking declaratory and injunctive relief and damages. The complaint alleged various bad acts and false and misleading statements by which the individual defendants violated § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), breached their fiduciary duties, wasted corporate assets, and had been unjustly enriched. Later that year, in response to demand letters and derivative complaints by other stockholders presenting similar allegations, Medtronic's board of directors (the Board) formed a special litigation committee (SLC) to investigate the claims. The district court dismissed Kokocinski's complaint without prejudice in 2013 for failing to establish demand

---

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

[2]An off-label use is one that has not been approved by the Food and Drug Administration.

-2-

futility.  See Fed. R. Civ. P. 23.1(b).³  Kokocinski then exercised her statutory right to review Medtronic's corporate records, Minn. Stat. § 302A.461, subd. 4, and in April 2014 she filed an amended complaint with bolstered allegations.

The SLC formed by Medtronic was initially composed of three members:  John Matheson, a law professor and expert in corporate and business law; former Hennepin County District Court Judge George McGunnigle; and former Governor of Utah Michael Leavitt.  Of these three, only Governor Leavitt was a Board member. Governor Leavitt left the SLC in December 2012 due to the possible perception of interestedness due to his having formerly been the Secretary of Health and Human Services, which oversees the FDA, the agency tasked with approving Infuse. Professor Matheson and Judge McGunnigle proceeded to engage in an eighteen-month investigation in which they engaged an accountant, a loss-causation analyst, and an economist; retained independent legal counsel; reviewed over 2.6 million documents; and interviewed sixty individuals, including current and former directors, officers, and employees of Medtronic, Medtronic sales representatives, consulting physicians, a physician who had been solicited to use Infuse, and one unaffiliated surgeon who had used the Infuse product.  In May 2014, the SLC issued a 69-page report concluding that it would not be in Medtronic's best interest to pursue litigation. It noted that setting forth detailed factual findings would not be in Medtronic's interest as Medtronic was currently involved in securities fraud and personal injury litigation involving similar allegations.  Further it noted that it did not find support for the allegations and rejected the claims of the demand letters and derivative complaints.

The individual defendants, Medtronic, and the SLC (even though it was not a named party to the litigation and had not filed a motion to intervene) each brought a motion to dismiss Kokocinski's amended complaint on the basis of the SLC's report.

---

³Rule 23.1 imposes certain prerequisites, pleading requirements, and procedures specific to derivative shareholder suits.

-3-

Applying Minnesota law, the district court determined the SLC's investigation and methodologies warranted deference to its report under the business-judgment rule (BJR), and it granted the motions.[4] After entering judgment, the district court denied Kokocinski's motion for relief from, or to amend, the judgment, and entered judgment on that motion as well. Kokocinski timely appeals from both memorandum orders and judgments, arguing that (1) the SLC was not properly formed; (2) it was not entitled to deference under the BJR; and (3) the district court committed reversible error in failing to permit the parties to engage in discovery.

## II.  DISCUSSION

Our standard of review on appeal depends on the proper way in which to construe the defendants' motions made on the basis of the SLC's report. The district court determined the motions should be construed as akin to a motion seeking voluntary dismissal of a shareholder's derivative action under Rule 23.1(c), borrowing from Rule 56 procedures. Borrowing a term from other cases, we will refer to the defendants' motions collectively as a "motion to terminate" the litigation. Kokocinski

---

[4]At all times relevant to this dispute Medtronic was incorporated in Minnesota. Therefore, Minnesota law governs application of the BJR to the SLC's recommendations respecting derivative state law claims. Burks v. Lasker, 441 U.S. 471, 478 (1979). When a derivative suit raises a federal question, the law of the state of incorporation "govern[s] the authority of independent directors to discontinue derivative suits to the extent such [state] law is consistent with the policies of" the asserted federal right. Id. at 486. In Abbey v. Control Data Corp., 603 F.2d 724, 731-32 (8th Cir. 1979), we applied Burks in concluding that a claim under § 14(a) of the Exchange Act was properly dismissed under state law. But see Galef v. Alexander, 615 F.2d 51, 62-64 (2d Cir. 1980) (holding dismissal of § 14(a) claim under BJR would frustrate federal policy). Abbey set out a fact-specific analysis that does not conclusively dictate the applicability of state law to the § 14(a) claim brought under the circumstances of this case. Neither party, however, disputes the issue and so we will assume without deciding that Minnesota law governs the SLC's recommendation respecting Kokocinski's federal as well as state claims.

argues that the motion should have been converted to a Rule 56 motion for summary judgment warranting de novo review because it relied on the SLC's report, a matter outside the pleadings.[5]  This is a matter of first impression for our circuit.[6]

The First Circuit, applying Delaware law, has followed the lead of Delaware courts and classified such a motion as a "hybrid summary judgment motion for dismissal," reviewing de novo. Sarnacki v. Golden, 778 F.3d 217, 221 (1st Cir. 2015) (quoting Zapata Corp. v. Maldonado, 430 A.2d 779, 787 (Del. 1981)).  Other circuits have regarded it as a Rule 56 motion, also reviewing de novo. E.g., Booth Family Trust v. Jeffries, 640 F.3d 134, 139 (6th Cir. 2011); Gaines v. Haughton, 645 F.2d 761, 769 (9th Cir. 1981), overruled on other grounds by Churchill v. The F/V Fjord (In re McLinn), 739 F.2d 1395, 1397 (9th Cir. 1984) (en banc).  The Eleventh Circuit,

---

[5]Kokocinski also argues that the SLC lacks standing in this appeal because it is not a party to the litigation and did not move to intervene.  The issues in this case are properly before us on the basis of Medtronic's and the individual defendants' motions and so we do not think it is necessary to address this issue.  Under Minnesota law, the burden of proving the elements of the BJR have been met lies with the *proponent* of the SLC's decision, In re UnitedHealth Grp. Inc. S'holder Derivative Litig., 754 N.W.2d 544, 561 (Minn. 2008), and Minnesota case law indicates such a proponent need not be the SLC itself, e.g., Janssen v. Best & Flanagan, 662 N.W.2d 876, 879 (Minn. 2003) (reviewing ruling on motion to dismiss by corporate board based on recommendation by SLC); Drilling v. Berman, 589 N.W.2d 503, 505-06 (Minn. Ct. App. 1999) (same).  So too as a procedural matter in the federal courts. Seidl v. Am. Century Cos., 799 F.3d 983, 989 (8th Cir. 2015).  In addition we note that although the SLC is a part of this litigation as movant–appellant, Kokocinski has not moved this court to dismiss the SLC from this appeal.

[6]In Abbey, 603 F.2d at 727, and Seidl, 799 F.3d at 989, we reviewed this type of motion, but in neither case did we address the issue of how the original motions to terminate should have been construed.  "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." United States v. Knowles, 817 F.3d 1095, 1097 (8th Cir. 2016) (quoting Webster v. Fall, 266 U.S. 507, 511 (1925)).

-5-

looking to Delaware law, has instead construed a motion to terminate as one arising under Rule 23.1 and applied an abuse-of-discretion standard of review. Peller v. S. Co., 911 F.2d 1532, 1536 (11th Cir. 1990). Minnesota courts have not characterized such motions consistently. See Janssen, 662 N.W.2d at 889-90.

We agree that because of its reliance on the SLC's report, and because it does not go to the adequacy of the pleadings, the defendants' motion cannot be construed as a motion under Rule 12(b)(6). On the other hand, a ruling granting the motion would not go to the merits of Kokocinski's claims, and so it does not fit neatly into the summary-judgment box either. Further, unlike a motion for summary judgment, an assessment of the independence and adequacy of an SLC's investigation involves making findings based on credibility determinations and the weighing of evidence, and in the event the motion is denied the movant is not entitled to litigate those fact questions afterwards. See Johnson v. Hui, 811 F. Supp. 479, 485 (N.D. Cal. 1991); Janssen v. Best & Flanagan, 662 N.W.2d 876, 889-90 (Minn. 2003) (holding that once an SLC's investigation is deemed inadequate, suit must proceed to merits). Therefore, neither do we think it proper to construe the defendants' motion to terminate as one arising under Rule 56.

We agree with the district court and the Eleventh Circuit that the closest fit for a motion to terminate in the Federal Rules is Rule 23.1(c). That Rule states in part that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Although Rule 23.1(c) applies only to derivative plaintiffs, Burks v. Lasker, 441 U.S. 471, 485 n.16 (1979), a shareholder's derivative claim actually belongs to the corporation, Ross v. Bernhard, 396 U.S. 531, 538 (1970). Thus, a Rule 23.1(c) "voluntary dismissal" appears to be a close analog to a corporate defendant's motion to terminate litigation which it possesses the right to pursue. Of course, this similarity is only skin deep where, as here, the corporation is a nominal defendant antagonistic to the action. But in the absence of a better fit, Rule 23.1(c) is most closely concerned with the issues raised in a motion to terminate. Review of

an SLC's decision and its investigative methodologies ensures a "disinterested independence and . . . an unprejudicial exercise of judgment" into whether litigation is in the best interest of the corporation. Auerbach v. Bennett, 393 N.E.2d 994, 1001 (N.Y. 1979). Similarly, Rule 23.1 in part "clearly contemplate[s] judicial review of the conduct of derivative actions to insure that the actions are in the best interests of the corporation." Johnson, 811 F. Supp. at 484; see also 7C Charles A. Wright et al., Federal Practice & Procedure § 1839 (3d ed. 2007) ("[B]y requiring court approval and notice to the stockholders of any proposed dismissal or settlement, the corporate interests . . . can better be protected from unfair or disadvantageous agreements.").

This characterization of the defendants' motion leads us to conclude the proper standard of review is for an abuse of the district court's discretion. The district court's inquiry on a motion to terminate involves determining whether the legal criteria of Minnesota law have been met based on its familiarity with the case, its weighing of the evidence, and its credibility determinations. As the Supreme Court has held, abuse-of-discretion is an appropriate standard in circumstances in which the district court must apply a fact-intensive legal standard, particularly where: (1) the district court is better positioned than the reviewing court to decide the issue because of its familiarity with the evidence–in such instances the normal "law-clarifying benefits" of the circuit courts will not be advanced with more searching review; and (2) the facts of each case are of a "multifarious, fleeting, special, [and] narrow" nature resulting in close calls, so as not to be susceptible of "useful generalization." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401-05 (1990) (quoting Pierce v. Underwood, 487 U.S. 552, 561-62 (1988)). Such is the case here. The district court must assess the weight and credibility of the evidence in order to evaluate the independence and adequacy of the SLC's investigation. In re UnitedHealth Grp. Inc. S'holder Derivative Litig. (*UnitedHealth I*), 754 N.W.2d 544, 561 (Minn. 2008). The range of circumstances district courts may face–the size of the corporation, the history and various relationships the SLC members may have with respect to the board and the corporation, the array of various methodologies an SLC may employ in its

investigation, the nature and quality of its report, the size of the SLC, and the nature of the derivative claims–will result in myriad, case-specific situations, often vague, best able to be resolved with the experience and case familiarity possessed by the district court. We therefore review the district court's decision for an abuse of its discretion.[7]

### A.     The Board's Resolution Establishing an SLC

Kokocinski argues that the Board never in fact formed an SLC to which deference could be afforded because the Board's resolution establishing the SLC did not delegate enough authority. In forming an SLC, "[t]he key element is that the board delegates to a committee of disinterested persons the board's power to control the litigation. A mere advisory role of the special litigation committee fails to bestow a sufficient legitimacy to warrant deference to the committee's decision by the court." Janssen, 662 N.W.2d at 884 (citation omitted). The Board's resolution designated an SLC "that has complete power and authority to investigate the Derivative Claim and analyze the legal rights or remedies of the Company and determine whether those rights or remedies should be pursued." The district court found the resolution adequate, not least because the resolution's language was taken almost directly from Minnesota Statutes § 302A.241, subdivision 1, which both authorizes boards to form and sets out the duties of an SLC. Further, it noted that substantially similar language was used in a resolution establishing an SLC deemed independent in *In re* UnitedHealth Group Inc. Shareholder Derivative Litigation (*UnitedHealth II*), 591 F. Supp. 2d 1023, 1028 (D. Minn. 2008). Kokocinski appears to make two arguments

---

[7]Obviously this inquiry entails findings of fact, which we typically review for clear error. But "[w]hen an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable: A court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only if the finding were clearly erroneous." Cooter, 496 U.S. at 401.

-8-

in her briefing: (1) that the SLC must be given authority *itself* to "pursue" litigation of the claims should it decide to do so; and (2) that the resolution must make clear that the SLC's decision to pursue the claims or not is binding on the Board.

Kokocinski relies on Janssen to argue that the Board must delegate to the SLC the authority to pursue, i.e., to itself direct or conduct, the litigation. But the express language in Janssen–"that the board delegates to a committee of disinterested persons the board's power to control the litigation," 662 N.W.2d at 884–does not compel a reading that significantly deviates from the normal rule that the board must simply delegate the authority to the SLC to make a binding decision on whether to pursue litigation, and nothing more. Minnesota case law both before and after Janssen refer only to an SLC's "recommendation." UnitedHealth I, 754 N.W.2d at 559; Drilling v. Berman, 589 N.W.2d 503, 506-07 (Minn. Ct. App. 1999). Janssen itself sets out this narrower take–SLCs "are charged with . . . *deciding whether pursuit of litigation is in the best interests of the corporation*." 662 N.W.2d at 884 (emphasis added). Further, the Janssen court described the resolution at issue in that case as instructing the SLC "to *determine* on behalf of [the corporation]'s board of directors *whether or not [the corporation] should join in legal action* against" a third party. Id. at 880 (emphasis added). The court's analysis of the adequacy of the resolution makes no mention that this language is insufficient. Id. at 888-89. Therefore we read Janssen as merely setting out the status quo of Minnesota law. Kokocinski cites no controlling authority for the proposition that the term "control" as used in that case means something more than this.

Kokocinski also argues that the resolution does not state clearly enough that the SLC's decision is binding. She points to the resolution in Toretta v. Lachinski, No. A12-0779, 2013 WL 491523 (Minn. Ct. App. Feb. 11, 2013), deemed adequate by the Minnesota Court of Appeals, which stated, "Any action duly taken or decision duly made by the [SLC] within the course and scope of its authority *shall be binding on the Companies*." Id. at *9 (alteration in original) (emphasis added). But the resolution

here follows precisely the language of § 302A.241. We think it would be passing strange to hold that a resolution employing the very statutory language setting forth the powers and duties of an SLC is itself insufficient as a matter of Minnesota law to form an SLC. That provision states only that an SLC "consider" whether claims "should be pursued." Minn. Stat. § 302A.241, subd. 1. In any event, we think the language also meets the standard articulated in Janssen–that the SLC's role be more than advisory. The SLC was given "complete power and authority" to determine–i.e., to "decide or settle . . . conclusively and authoritatively," *Determine*, The American Heritage Dictionary (2d college ed. 1982)–whether the litigation *should* be pursued–i.e., whether the Board has an "obligation or duty" to do so, *Should*, The American Heritage Dictionary. Further, the Board's bylaws task SLCs with determining "whether it is in the best interests of the corporation" to pursue litigation, and under Minnesota law a director is obligated under her fiduciary duty to the corporation "to act . . . in the best interests of the corporation." Shepherd of the Valley Lutheran Church of Hastings v. Hope Lutheran Church of Hastings, 626 N.W.2d 436, 442 (Minn. Ct. App. 2001). Finally, the Board's bylaws state both that the SLC is not subject to the control of the Board and that "[t]he good faith determinations of the [special litigation] committee are binding upon the corporation and its directors." Thus it is abundantly clear that the Board, under the resolution, its fiduciary duties, and its bylaws, is bound by the SLC's decision whether to pursue litigation. This is enough to constitute an SLC under Minnesota law.

### B.     Deference to the SLC Under the Business-Judgment Rule

Kokocinski next argues that the district court erred in deferring to the SLC under the BJR. Minnesota law provides that a corporate board of directors may form "a special litigation committee consisting of one or more independent directors or other independent persons to consider legal rights or remedies of the corporation and whether those rights and remedies should be pursued." Minn. Stat. § 302A.241, subd. 1. If a shareholder brings derivative claims based on a cause of action investigated by

-10-

an SLC, and the SLC determines the corporation should not pursue those claims, the defendant may move the district court to defer to the SLC's decision and dismiss the complaint under the BJR. The BJR is "a presumption 'developed by state and federal courts to protect boards of directors against shareholder claims that the board made unprofitable business decisions.'" UnitedHealth I, 754 N.W.2d at 551 (applying BJR to decision by SLC) (quoting Janssen, 662 N.W.2d at 882).

The two predominant analyses of motions to terminate derivative litigation on the basis of an SLC's recommendation were set out in Auerbach, 393 N.E.2d 994, and Zapata, 430 A.2d 779. Auerbach emphasized deference to the SLC's business judgment, evaluating only its investigative methodologies and procedures. Zapata added an additional step, wherein the court applies its own independent business judgment to the SLC's substantive decision. The Minnesota Supreme Court, following the Auerbach approach, has instructed that courts must apply the BJR and defer to an SLC's decision "if the proponent of that decision demonstrates that (1) the members of the SLC possessed a disinterested independence and (2) the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith." UnitedHealth I, 754 N.W.2d at 561. Kokocinski argues that neither element has been met here.

### 1. Whether the SLC Possessed a Disinterested Independence

In UnitedHealth I, the Minnesota Supreme Court stated that whether an SLC is disinterested and independent should be assessed by considering the totality of the circumstances. 754 N.W.2d at 560. The court set out a non-exhaustive list of eleven factors to consider. Id. at 560 n.11. The district court carefully considered the factors and determined that the SLC was disinterested and independent. Kokocinski does not object to the district court's overall weighing of those factors, but rather argues specifically that the SLC was not disinterested and independent because: (1) its members were compensated in violation of the Board's bylaws; (2) its members were

-11-

paid excessive compensation; (3) and its members' compensation and access to indemnification were controlled by the conflicted Board.[8]

SLC members may be composed of "independent directors or other independent persons." Minn. Stat. § 302A.241, subd. 1. Whether or not an SLC member is a director, however, she is "deemed to be [a] director[]," id. § 302A.241, subd. 7, for the purposes of Minnesota law regarding director standards of conduct, id. § 302A.251, conflicts of interest, id. § 302A.255, and indemnification, id. § 302A.521. The Board's bylaw 2.9 states in relevant part:

> Directors who are not salaried officers of the corporation shall receive such fixed sum and expenses per meeting attended or such fixed annual sum or both as shall be determined from time to time by resolution of the Board of Directors. Nothing herein contained shall be construed to preclude any director from serving this corporation in any other capacity and receiving proper compensation therefor.

The SLC members were paid at an hourly rate, rather than a sum per meeting or per annum. The district court apparently agreed with Kokocinski that the SLC members' status as directors under Minnesota law meant that they were directors for the purpose of bylaw 2.9. But it noted that the final sentence of that provision allows for "proper compensation" for directors serving Medtronic in "any other capacity," and it reasoned serving on the SLC was such an "other capacity." The SLC members, both lawyers, were paid their standard hourly rate and therefore the district court concluded that their compensation was not an improper personal benefit.

---

[8]Kokocinski also raises the fact that Judge McGunnigle owned 450 shares of Medtronic stock. However, as the district court noted, this actually aligns him with Medtronic's interest in the litigation. Furthermore, McGunnigle disclosed his ownership and directed his financial advisor to refrain from buying or selling Medtronic stock during the investigation. The district court correctly concluded under these circumstances that this stock ownership did not render him interested.

-12-

Kokocinski argues first that the SLC members are deemed to be directors under Minnesota law, and so their method of compensation violated bylaw 2.9. She reasons that because their compensation violates the bylaws, the activities they conducted for that compensation were ultra vires. We reject this argument. To begin with, it is a non sequitur to conclude from the fact that Minnesota law deems SLC members to be directors for three limited purposes–standards of conduct, conflicts of interest, and indemnification–that they must be deemed directors for all purposes in interpreting the Board's bylaws. Those bylaws indicate, to the contrary, that SLC members are not directors by virtue of their membership on the SLC. Bylaw 2.10 states that committee members "need not be directors," and that an SLC is to be composed of "two or more disinterested directors or other disinterested persons." Neither Professor Matheson nor Judge McGunnigle was a Board member, and so we do not even concede, as the district court appeared to, that they were directors for the purposes of 2.9. But even if we did agree with that assessment we would reach the same conclusion as the district court–that they were serving the Board in an "other capacity." Further, it is not clear that a violation of the bylaws' rules on compensation would, per se, mean the SLC was not independent. Under the multi-factor, totality-of-the-circumstances approach set forth in UnitedHealth I, this would only be one factor to consider. Kokocinski does not offer any meaningful argumentation on why this one factor would tip the balance in her favor. Finally, if the provision on compensation was violated, it is not clear why this would render the SLC's actions ultra vires, as their activities were inarguably within the ambit of authority delegated them by the Board's resolution. Kokocinski appears to conflate the act of payment–which if made in violation of the bylaws may very well be ultra vires–with the SLC's act of investigating legal rights and remedies, which is itself not implicated by bylaw 2.9.

Second, Kokocinski argues that the members were paid excessive compensation because they were paid "presumably in excess of several hundreds of thousands of dollars." Kokocinski notes that the SLC members are seasoned lawyers with presumably high rates and that they took eighteen months to investigate and complete

their report.  Minnesota law precludes articles of incorporation from limiting the personal liability of a director "for any transaction from which the director derived an improper personal benefit."  Minn. Stat. § 302A.251, subd. 4(d).  Kokocinski argues that the SLC members' excessive compensation is just such an improper personal benefit, which exposes them to liability and thereby renders them interested in the results of the investigation.  In our view, it is difficult to see how payment of the SLC members' standard hourly rate as attorneys could be considered improper.  If anything, an hourly rate *encourages* thorough, time-intensive investigation.  Moreover, it would be unfair to boards to encourage them to find competent, disinterested professionals to serve on an SLC, while finding that payment to those professionals of their standard rates constituted excessive compensation.

Third, Kokocinski argues that because the conflicted Board set the SLC members' compensation, and because it determines whether they are eligible for indemnification, Minn. Stat. § 302A.521, subd. 6(1), the SLC members were not disinterested and independent.  We find this fact alone insufficient to overcome Medtronic's showing of independence, particularly in light of the fact that this arrangement appears to be exactly what is contemplated under Minnesota law.  Kokocinski offers no evidence that either the SLC members' compensation or indemnification was contingent on their recommendation.  The district court did not abuse its discretion in determining that the SLC was independent and disinterested.

## 2. Whether SLC's Investigative Methodologies and Procedures Were Adequate, Appropriate, and Pursued in Good Faith

Kokocinski next argues that the SLC's report was deficient because it did not address with sufficient particularity the allegations raised in her complaint. To show that an investigation was adequate, appropriate, and pursued in good faith under Minnesota law, "the proper inquiry is into the adequacy of the committee's procedures and methodologies as a whole." Drilling, 589 N.W.2d at 509. A district court's review of the SLC's investigation must be "robust," UnitedHealth I, 754 N.W.2d at 559, so as to ensure that the SLC engaged in a "comprehensive weighing and balancing of factors" including the corporation's economic health, internal relations, public relations, and "other factors common to reasoned business decisions." Janssen, 662 N.W.2d at 889. However, "[w]hat has been uncovered and the relative weight accorded in evaluating and balancing the several factors and considerations are beyond the scope of judicial concern." Drilling, 589 N.W.2d at 508 (emphasis omitted) (quoting Auerbach, 393 N.E.2d at 1003). "Factors underlying the decision include: (1) the length and scope of the investigation; (2) the committee's use of independent counsel or experts; (3) the corporation's or the defendants' involvement, if any, in the investigation; and (4) the adequacy and reliability of the information supplied to the committee." UnitedHealth II, 591 F. Supp. 2d at 1029.

The SLC's report stated, "The SLC investigated the allegations in the demand letters and derivative complaints" and "considered the legal and factual strengths and weaknesses of all of the claims." After setting out a non-exhaustive list of twenty-seven factors it considered, the SLC concluded litigation would not be in Medtronic's best interest and that "it ha[d] not found support for and reject[ed] the core proposition of the demand letters and derivative complaints." The district court concluded on the basis of the factors quoted above that the investigation was adequate, appropriate, and pursued in good faith. Kokocinski argues that the SLC's report is inadequate because it does not lay out specific factual findings and documents it relied upon, because it

does not specifically address particular allegations in her complaint, and because it did not consider then-pending litigation in an action that had been filed shortly before the report was issued.

We conclude that the SLC's investigation easily met the requirements of Minnesota's BJR. The investigation was extensive in both its length and scope. The SLC reviewed over 2.6 million documents and interviewed sixty individuals over an eighteen month period. It relied on the advice of independent experts and counsel. Kokocinski presents no evidence that Medtronic or the individual defendants were involved in the investigation, and she has not raised any complaint about the quality of the information received. Kokocinski primarily relies upon Janssen, but that case involved an SLC with a single member who neglected to interview the plaintiff or the plaintiff's attorneys and who "gave no indication that he had undertaken the careful consideration of all the germane benefits and detriments to" the corporation. 662 N.W.2d at 889. Here, by contrast, the SLC laid out twenty-seven factors it considered, touching on myriad aspects of Medtronic's business, including its economic health, officer and director responsibility, the evidence, the nature of the legal claims, credibility of the witnesses, policies of federal law, findings of previous investigations, Medtronic's relationship with its customers, employee morale, and the effect on Medtronic's future business relationships. In addition, the SLC's report stated that it considered "the existence of and possible effects on parallel litigation in state and federal courts." As to Kokocinski's arguments, we agree with the district court that, in effect, Kokocinski seeks review of the substance and rationality of the SLC's decision. This is something we are precluded from reviewing under Minnesota law. We find no abuse of discretion in the district court's determination that the SLC's investigation was adequate, appropriate, and pursued in good faith.

-16-

## C.   Discovery

Finally, Kokocinski argues that it was reversible error for the district court to decline to order discovery before deciding on the motion to terminate.  "We review the district court's discovery decisions for an abuse of discretion."  Schoffstall v. Henderson, 223 F.3d 818, 822 (8th Cir. 2000).  "Our review of questions concerning discovery matters is very deferential.  The trial court is afforded great latitude in such matters, and this court will not generally interfere with the trial court's ruling."  SDI Operating P'ship v. Neuwirth, 973 F.2d 652, 655 (8th Cir. 1992).  Both of the seminal cases on termination of a derivative claim by an SLC treat discovery as discretionary.  See Zapata, 430 A.2d at 788 ("Limited discovery may be ordered to facilitate such inquiries."); Auerbach, 393 N.E.2d at 1003-04.  The district court concluded that "the evidence available was enough to establish the SLC's independence and the validity of its methodology."

Kokocinski argues that further discovery would have allowed access to documents relating to:  compensation of the SLC's members; formation of the SLC and selection of its members; adoption of the SLC's recommendations; and retention and compensation of experts consulted by the SLC.  Kokocinski primarily relies on Parkoff v. General Telephone & Electronics Corp., 425 N.E.2d 820 (N.Y. 1981), which noted that "it would be unreasonable to hold plaintiff in cases such as this to the customary requirement that he show that facts essential to the defeat of the motion may exist although they cannot be stated" where "all possible evidentiary data with respect to the areas of permissible inquiry were within the exclusive possession of defendants."  Id. at 822.  But that case dealt with a peculiar situation in which the lower court had essentially placed on the plaintiff the burden of showing fraud or bad faith in order to be permitted to engage in discovery.  Nothing of the sort exists in the present case.

The defendants met their burden with affidavits including the SLC's report, demand letters and complaints from shareholders, the Board's resolution, and Medtronic's marketing policies. Kokocinski filed an affidavit in opposition that included the Board's bylaws and a letter from counsel for the SLC refusing a request for specific information on how the SLC members were compensated, but acknowledging that they were paid their standard hourly rates. Presented with this and other evidence, the district court exercised its sound discretion in concluding that discovery was not necessary. Although Kokocinski has identified areas she would like to have investigated further, she points to no indication in the existing evidence that further discovery may be fruitful. "To speculate that something might be caught on a fishing expedition provides no basis to postpone decision" on a motion to terminate. Auerbach, 393 N.E.2d at 1004. To the extent any object of discovery would go to the substantive decision by the SLC, that is irrelevant to the analysis under UnitedHealth I, which examines only the procedural reliability of the investigation. Given the deference we afford discovery matters, we do not believe the district court abused its discretion in denying Kokocinski's motion for discovery.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court.[9]

------------------------------

[9]We rely on the foregoing reasons as well to affirm the district court's denial of Kokocinski's motion for relief from, or to amend, the judgment. We decline Kokocinski's request to have these issues certified to the Minnesota Supreme Court, as we do not believe the requisite conditions for certification as set forth in Hatfield ex rel. Hatfield v. Bishop Clarkson Memorial Hospital, 701 F.2d 1266 (8th Cir. 1983) (en banc), have been met in this case. Further, we deny Appellant's Motion for Request for Judicial Notice, as the referenced materials do not affect our decision.